I'm Kay Evans for the petitioner in this matter. And we have a basic issue here involving whether the immigration judge acted arbitrarily, periciously, and in violation of the law in denying her motion. You're going to have to keep your voice up. Oh, I'm sorry. The issue is whether the immigration judge acted arbitrarily, periciously, and violated the law when he refused to reopen Mr. Rand's case. Ms. Duran was not represented at the time that this decision was made by the immigration judge. She subsequently promptly hired someone right after she was notified about the decision of the judge. The record contains a clear indication that there was an erroneous address in the system at the EOIR. They had 24th place instead of 224th place. The second notice that was sent to her, which was the decision, got to her approximately two weeks after it was mailed. And the record shows that there was a notation by the postal clerk with something written on 224 question mark, whether this seems to indicate that the postal person had a little difficulty finding that, which gives support to the fact that whoever it was that tried to deliver the first one might have had the same or most likely had the same difficulty. And it's possible. But your client lived in Carson. Yes. Yes. But the record shows that the one notice, the notice that was sent to her, that she got, was sent to 24th place instead of, yes. They start out, you know, 1st Street, 2nd Street, 3rd Street, 4th Street. When you get to the other street, you're in Carson. Yes. Yes. But there's no 24th Street in Carson, actually. Isn't this kind of a simple question of what presumption applies? I mean, in this case, you filed, I assume you've been here for the last discussion, you filed an affidavit from her explaining. Yes. Previous counsel did, yes. Previous counsel. And she had been in the immigration system quite extensively with, in terms of, you know, she had been here 17 years. They'd had another incident of a wrong address. She disclosed her address to the INS. So she wasn't hiding from anybody. No. No. And so she showed all the reasons why, if she got a notice, she would have shown  Yes. So I guess I'm wondering if maybe the issue was simply that the immigration judge seemed to apply the wrong standard. Correct. Because she says, well, it was constructive notice. Right. I don't know what constructive service of the notice is. It seems it would be, to me, if there had been certified mail and someone had, someone, a responsible person had signed that certified mail and returned it and the that would be constructive service, even if the person denies they received it. Right. But what you had was ordinary mail. Yes, it was. Ordinary mail. And so that's different from the case that we just heard. Yes, it is. And your position is much stronger because the government doesn't claim it's sent by certified mail. No, it doesn't. And your situation is you've got some proof of a wrong address, you've got an affidavit, and you've got regular mail, which we all know sometimes goes astray, right? Yes. So there's not such a strong presumption. Right. So this calls for a revisiting of this and establishing a standard of what the presumption should be. Interesting to point out also is that the service, the way the facts are in this was received, above all else, even if all else fails. Where would that be required under what? It's in HCFR 1003.26c, which the second part states the service has to establish by clear, unequivocal, it's on page 18 of my brief. Oh, this is because it's an in absentia? Yes, directly relating to an absentia order. Thank you. And the government did not meet that, in addition to the judge being a little bit irrational. And the government, when you filed at the immigration judge level the affidavit and the motion, the government filed no opposition? That's correct. There was no opposition to that motion. And ordinarily, a judge would have, under those circumstances. And he also confirms and, you know, stipulates the fact that a notice was sent to 24th Place instead of 224th Place. That would be on page 25 of the. Can I ask a question? I couldn't, I can't figure out from these cases. You have the notice to appear, and it has an address in it. Yes. And according to them, the notice to appear itself has the correct address. Is that right? Yes. But this one has the wrong address. The notice that told her she was deported had the wrong address. I mean, I don't know how that happens. The decision had the wrong address, but did the notice also have the wrong address? There is no way to know that. Interesting to note that there is something in the record that has been. Maybe just let me stop one second. I wanted to know, I mean, the notice is this piece of paper. Right. Do these come with those clear envelopes? You mean with the window envelopes? Yes. Yes. Okay. And so don't we have the notice to appear from the government file? There is a notice in the record. But I've noticed that some things were blacked out on it. I'll tell you what page that is on. See, I have a notice at page 41. And this is the weird thing is that the notice on page 41 says 224th place. Oh, this is not the notice. This is the one that's sent from the government, and this is usually not. Oh, as opposed to the information. This one is usually not sent in a window. It has several attachments, as you can see here. And this was not signed by the alien. She never received this. This is the first notice to appear. Okay. And it set the date. Usually they don't, but it set the date of the hearing. But these, they're served to me often, and these usually contain a package of warnings and stuff like that. And I don't think this one goes into a window. The one from the court goes into a window. Okay. So just so we're clear, the one that she didn't get, she's saying she didn't get the notice to appear, correct? Correct. She didn't get anything before the notice that's ordering her deportation. She got the decision, which was the notice that you're being deported. She got nothing before that. But before that, she claims she didn't get anything. And what she normally would have gotten was the NTA, the notice to appear. Correct. And is that what is on page 41 of the excerpt? Yes. That one is actually not a window. Okay. That's not a window. Right. And does that one, according to page 41, does that have 224? Yes, it does. It does have 224. But if it didn't use, if a window wasn't used, that would have to be re-inputted into the computer or typed on the envelope. And I think that is probably where the error arose. The important thing here, though, is that there was equivocation, clearly, even in the judge's decision that's on page 24. He admits that the one that the Court sent, the last one, was to 24th place. And I don't understand where the EOIR staff would have gotten that 24th if the record had this in it. Clearly, you know, the immigration, this was sent by the Immigration Service, not by the Court. The NTA. Okay. Okay. Maybe we can hear from the government. Pardon? Maybe we can hear from the government to try to help sort this out. Oh, I'm sorry. May it please the Court, Your Honors. My name is Robin Bly. I represent the Attorney General in this matter. Just to point out a few things. Under the statute, there is no requirement that certified mail is required to mail the notice to a peer. And that appears at 8 U.S.C. 1229. We're not questioning that. The question is, when you don't mail it, certified mail, and have it received in your file, you don't have the kind of presumption that the cases have talked about where certified mail was used.  You have that information. You don't, correct, if you use regular mail. But in most cases, you do get the letter back saying, return to sender, or incorrect address, or something indicating that they could not deliver it. But you're saying, you know, you concede a lot when you're saying in most cases, but not every case. Well, I can't speak to every case, Your Honor. Wasn't this a heavy envelope? And no assurance that the government is going to return a heavy envelope where it just takes a lot of handling and more postage, which. Your Honor, I can assure you that they do, because our office gets them back on a regular basis from others. Let me ask you about that, because you make, I think, a very good point. However, the service never came in and said, we didn't get this back. In other words, she files her affidavit and her motion, and then it's sitting there. That's the only evidence before the immigration judge to try to figure this out. No one from the government says, you know what, she may have that affidavit, but I can tell you, we usually get this stuff back. We never got anything back. We've searched our files. So you don't have that evidence, correct? That's correct. We don't. So we can't consider that. So now the real question is, if there's some presumption that if you stick something in the mail, it gets there, has she rebutted that enough with her affidavit and her information and the transposition of numbers? Well, Your Honor, first I should point out that, and I'm sure the Court's well aware of this, that INS and EOR, which is the board, are separate agencies. They have separate, you know, they have separate mailings and everything else. They're not related in that sense. And in this case, she indicates in her affidavit that it's presumed because the incorrect address was on her immigration judge's decision that she eventually received that the same probably happened. But there's no indication that that happened. But there's no indication it didn't. I mean, in other words, she --- That's correct. You're correct. I mean, that's coming from the court, so to speak, and the other one's coming from the administrative body that issues these notices. But you can't presume based on that that because the EOR or the board or immigration judge's court had the wrong address that EOR or INS had mailed it to the incorrect address or anything like that. They're two separate entities. They would have mailed them separately. It's unclear why there was an incorrect address with the immigration judge's For whatever reason, it was delivered to her. Maybe not as timely as it could have been, but there's indication that she did receive it. She admits that she received it. Why isn't this like this Gunam case where they say, look, if you put in an affidavit and you're the kind of person that's sort of been in the system, you know, that you didn't get the notice, you'd been in the system, you'd kind of been dealing with the system straight up up until this point, that that's enough, they say, in that case to at least have an evidentiary hearing on the matter. Why isn't that? Well, Your Honor, I don't think that she's been very straight with this system. I mean, she got her visa petition based on fraud. She indicated that she wasn't married, and at the time she was, and that was why her visa was granted. In addition — Maybe it was a common-law marriage. No, Your Honor, I think it was an actual marriage, not a common-law marriage. But the application was filed before she was married. Right. That's correct, Your Honor, but she still, in order for her to obtain that visa, she had to have been unmarried the entire time and been unmarried when she got the visa. That's a substantive question of whether there was fraud or not, but she was in the system. She's filing papers. She's not hiding. She's not saying, I'm not here. And that's what Gunam says. But it doesn't say we have to decide whether she's right or wrong. It just says, should she get a hearing? That's really the question, real simple. Should she get a hearing to determine whether she got notice? And the IJ could say, look, I just flat don't believe you. Then we'd have deference to that. Well, Your Honor, the only application she had before the service at that time was her naturalization application. It was only later that she filed after the in absentia order had been issued that she filed her cancellation application. This case is different from Salta and Singh and Chete Juarez, where all those aliens had appeared for most if not most of their hearings, had, you know, some of them had gone to the INS to be asked or DHS to be put into proceedings so that they could apply for a certain relief. And in this case, that just wasn't the case. I mean, she was denied naturalization, but she didn't have any other application pending before this Court at that time. But what do you think somebody would need to do to get an evidentiary hearing? What would be the level of proof they would need to offer in your view under the law, assuming ordinary male? Your Honor, I'm not really sure. I mean — Well, then how can she be sure? I mean, what more could she have offered? I honestly don't know, Your Honor, but the law, you know, says that basically regular male is okay and that we have to presume that the post office did their duty unless she's shown evidence to the contrary, which the fact that the immigration judge's decision with the wrong address was delivered shows that the postal service in that area was very diligent and served this document or delivered the document to her even with an incorrect street address. That's a long jump. But it happened, Your Honor. You know, I'll tell you this about my male. I know my postman, and I've known him for years. I get mail delivered to my house that belongs to people three blocks away. And the other day I opened up looking at a New Yorker that had been sitting around for two weeks, and what they do sometimes is they tuck the letters in the magazines. There's my mail, you know. A lot of times I take these magazines and throw them away. So the postal service isn't as efficient as it used to be. That's why people are using FedEx. Well, Your Honor, I understand that, but in this case, you know, the evidence does seem to indicate that the postal service in her area was diligent, that they were aware that. That postal service is not in her area. Whoever got it at 24th Street, which is down here in the downtown area, knew enough about Carson to somehow figure out that there wasn't a 24th Street in Carson. It's down here in South Central. Carson's way up 200 blocks towards the ocean. Well, Your Honor, I think that's presuming that it was sent to an L.A. postal service. I mean, if this had a Carson zip code, I would presume that it was in the Carson postal service. Might be, might not be. Before you go, I want to ask a question. Sure. We have five immigration cases, and we have three different lawyers from Washington, D.C., which involves a lot of travel money. And I don't understand why when there are several immigration cases on appeal way out here in California that one lawyer can't handle them. Your Honor, I think this has been raised by this Court before. Well, I haven't raised it. I'm sorry. When we get assigned these cases, we usually get assigned four or five cases to argue. But this Court often drops cases, and so we pick other cases up and try to do as many as possible. But sometimes these cases are dropped at the last moment or other conflicts arise. So we do try and consolidate as many as possible and do as many as we possibly can. But, I mean, we could have sent an attorney for each case, but instead we have one. Yeah, but you got one. You're taking two cases. Holtzman's taking two cases, and Cindy Farrar is taking one case. I mean, when I practiced law many years ago, if we had three appeals in St. Louis where my circuit and my office, one lawyer would take two appeals. If we had three, one lawyer would take three appeals, save money. But I know the government, I'm just calling attention to it. And you might tell your supervisors there's a judge from the Eighth Circuit that's worried about spending government money. Well, you can tell your supervisors that not everybody shares that view. I think this is just a contrary view. It's the role of the Department of Justice to determine how it wants to be represented in the court. I think they've made a good effort generally to double up on lawyers. We know there's like three panels sitting this week. We don't know what other cases you've argued. As you point out, cases get dropped. You don't know until five weeks before where it's going to be argued in any given circuit. Although we like to save money for the taxpayers. You can tell your office that. You don't need to break it. I just say that we understand the difficulties given the volume of cases. All right. Thank you all. I will take your concerns. The difficulties given the volume of cases arise out of the conduct of the Justice Department and the Attorney General's Office. That's a whole other issue. But we can't parse them out. We've got to look at all the circumstances. Anyway, I call it R&R. All right. Well, thank you. If there are no further questions. Okay. Thank you. Thank you. Ms. Kagan. Yes. This Court should at the very least remand this matter to the Immigration Court for an evidentiary hearing. There are several things to be considered. The Petitioner was not represented. She was not personally served with a notice to appear. And because she had not previously been in court, she was not informed of the consequences of not appearing and the requirement to report her address. Counsel for the Government refers to the Salta and Chete cases, that they had a history of this. But on the side of this Respondent, she has a history of being in the United States for a very long time. She has been here 21 years as of today. And her family are all here, her children. She came in in the wrong category. She got married before she migrated. Her father was not a resident. He was not a citizen. He was only a resident.  I will never understand it myself. Why the child of a resident with a certain status is not able to migrate to join him and another resident whose parent is a citizen can do that. She has no criminal record. And for that matter, what she probably had was a conflict between her religion and the U.S. laws, where she felt obligated to get married rather than living in sin because she's a Catholic. And she decided to choose the way to heaven rather than the way to the U.S., I guess. That's a good place to stop. The most significant point is... Is there anything in the record that tells us whether she reads English? Oh, yes. She's been here since 14, Your Honor. She went to high school here. Let me ask you a question. Yes. Did she go to high school here and not read English? Oh, no, no, no. The record should show that if you look at it. She's a decent lady. And her one mistake doesn't make her a hardened criminal or a chronic liar or anything like that. So the judge's presumption that her, it seems like he thought she was unbelievable, that should not have, that has no foundation, no basis. I got to ask you one question. Do we, if we agree with you, do we remand to the BIA with instructions to remand to the immigration judge? You know, Your Honor, because the BIA affirmed without decision. I know, but do we remand? Oh, the remand. I guess that would be proper to the BIA to remand to the court. Right. That's what I'm wondering about, the procedure. But we'll figure that out. We'll figure it out. Okay. Thanks.
judges: Bright, Pregerson, McKeown